No. 5908.

STATE OF LOUISIANA EX REL. ATTORNEY GENERAL VS. CHARLES CLINTON, AU— DITOR, AND ANTOINE DUBUCLET, TREASURER. FRANK MOREY, INTER— VENOR. THE FUNDING BOARD MADE PARTY DEFENDANT.

From the pleadings in this case, and from the evidence in the record, it is unquestionable:

First—That the bonds, which are the subject of this controversy, were issued under and by virtue of legislative authority.

Second—That the proceeds thereof went into the State Treasury, and were appropriated for a purpose vital to the interests of the public.

Third—That the bonds in suit are in the hands of a *bona fide* holder, who purchased them in open market, and for a valuable consideration; and that the acts under which they were issued are not unconstitutional.

Therefore, the intervenor, Frank Morey, is entitled to have the bonds in question funded by the Funding Board according to law.

APPEAL from the Superior District Court, parish of Orleans. *Haw-kins*, J. *A. P. Field*, Attorney General, *J. B. Cotton*, and *J. Q. A. Fellows*, for plaintiff and appellee. *John Ray* and *C. T. Bemiss*, for intervenor and appellant.

MORGAN, J. The Attorney General avers that under act No. 35 of the session of 1865 the Governor was authorized to issue, and did issue, one thousand bonds of one thousand dollars each, payable in twenty years, bearing interest at eight per cent per annum, the interest payable semi-annually, to defray the expenses of building levees in accordance with contracts which had been made by him and the levee commissioners, which bonds were to be sold, if possible, after thirty days notice, at par, and if not sold within that time, that they could be pledged for loans in order to carry out the provisions of the law; that said bonds were executed and delivered to the Board of Levee. Commissioners as follows: One hundred, dated sixteenth of February, 1866; eighteen, dated tenth of March, 1866; five hundred and six, dated fourteenth of March, 1866; one hundred and sixty-five, dated twentieth of March, 1866; two hundred and eleven, dated first of July, 1866.

That during the summer of 1866 two hundred and eighteen of these bonds had been taken to New York for sale, but a sale not having been effected, were left there on deposit; that the remaining seven hundred and eighty-two bonds had been pledged, under the law, by the Board of Levee Commissioners on the first of September, 1866, as follows: Seventy-eight to Pike, Lapeyre & Brother, fifteen to the City National Bank, four hundred and ninety-eight to Forstall & Delassus, one hundred and thirty-three to Abat & Generes, forty to the Citizens' Bank, and twenty-one to sundry insurance companies, three bonds to each company, less three bonds pledged to the Louisiana Mutual Insurance Company, redeemed in June, 1866, and included in the two hundred and eighteen sent to New York for sale; that in October, 1866, six bonds (three each) pledged to the Crescent and Citizens' Mutual Insurance Companies were redeemed, and the two hundred and eighteen sent to New York were returned, making in all two hundred and twenty-four bonds which were, on the fourteenth of December, 1866, exchanged by the Board of Levee Commissioners with the then Treasurer and Auditor for a like amount (two hundred and twenty-four thousand dollars) in State notes, otherwise called certificates of indebtedness.

That on the fifth of January, 1867, the four hundred and ninety-eight bonds pledged to Forstall & Delassus were redeemed, and on the ninth of January, 1867, four hundred and seventy-six of the same were exchanged for State notes or certificates of indebtedness to an equal amount, which seven hundred bonds were from that date in the State treasury, or under the control of the Treasurer and Auditor.

That said exchange of State notes for said bonds, or, in other words, the redemption of said bonds to the extent of seven hundred thousand dollars, though done without authority by the Treasurer and Auditor, was subsequently ratified by act No. 117 of the acts of 1867.

That on the nineteenth of January, 1867, the twenty-two bonds then in the hands of the Levee Commissioners and not exchanged with the Auditor and Treasurer were pledged by the Board of Levee Commissioners to the Citizens' Bank, the disposition of said bonds being on the nineteenth of January, 1867, as follows: Seven hundred bonds in the treasury, and three hundred bonds pledged for loans made by the Levee Commissioners, as follows: to Abat & Generes, one hundred and thirty-three bonds; to Pike, Lapeyre & Brother, seventy-eight; to the City National Bank, fifteen; to the Citizens' Bank, sixty-two, and to sundry insurance companies, twelve.

That under act No. 35 of the acts of 1867, authorizing the return of one hundred and fifty thousand dollars from the general to the levee and drainage fund, the Treasurer, on the second of March, 1867, pledged three hundred and thirty-two of these bonds to Pike, Lapeyre & Brother,

State ex rel. Attorney General vs. Clinton, Auditor, and Dubuclet, Treasurer.

and under act No. 88 of acts of 1867, authorizing the Treasurer to borrow fifty thousand dollars, he (the Treasurer) pledged seventy-five of these bonds to the Citizens' Bank.

That the first of these acts authorized the loan to be made for sixty or ninety days, and the second to be for thirty or sixty days, said loans to be repaid out of the taxes and revenues as the same shall come into the general fund.

He avers that the redemption of the bonds as aforesaid extinguished the same to the extent of seven hundred thousand dollars, and that the provisions of act No. 35 of 1867, authorizing the pledge of the three hundred and thirty-two bonds for the loan of one hundred and fifty thousand dollars was unconstitutional, the object of the loan not being named in the title to said act.

He avers that on the twenty-sixth of March, 1867, two acts of the Legislature were passed, one, No. 115, authorizing the issue of four million dollars of bonds for levee purposes, and act No. 116, repealing act No. 35, of December, 1865, which authorized the issuing of one million dollars of levee bonds, and directing the Auditor and Treasurer, in the presence of the Governor and Secretary of State, to cancel all the bonds of the one-million-dollars issue in the hands of the Levee Commissioners, which they were ordered to return as well as those in the treasury, to wit: two hundred and ninety-three bonds, and those which then might be held in pledge, to wit: four hundred and seven bonds; that by the provisions of these laws ample means had been provided to redeem all those bonds which were in pledge for loans by the State, by way of first taxes coming into the general fund, and as to those loaned by the Levee Board, by the bonds soon to be placed in their hands known as the four-million-dollars issue of levee bonds ; that the two hundred and ninety-three bonds, by the act No. 116, became extinguished, null, and void, and those in pledge from the moment they should be redeemed; that all said bonds then in pledge could and should have been redeemed before the expiration of the year 1867, and that they would have been, had the Auditor and Treasurer not been grossly derelict in their duty.

He avers that all these bonds, so far as they were in the treasury, instead of being canceled, were again re-issued, either as pledges, or sold, and that those which had been pledged were suffered to be sold, and that they are now uncanceled.

He avers that under the provisions of act No. 122 of 1867, for the purpose of borrowing two hundred and fifty-thousand dollars, two hundred and twenty of these bonds were, on the eleventh of April, 1867, pledged to Smith, Newman & Co.; sixty bonds, on the third of April, 1867, were pledged to the Canal Bank; and that on the twenty-eighth of March, 1867, ten bonds were pledged to the Citizens' Bank. He avers that it is

pretended that one hundred and sixty-seven of these bonds were sold by authority of act No. 123 of 1869, because the same were alleged to be in pledge, when, in fact, they were in the vaults of the treasury, and should have been destroyed two years previous to the passage of the act, and that three other bonds were disposed of under act No. 58 of 1869, which bonds should also have been canceled, and that they were in law canceled on the twenty-sixth of March, 1867.

He avers that none of the bonds which had been pledged were redeemed or canceled, as was required by act No. 116 of 1867, but that, in violation of that act, were pretended to have been sold or suffered to be sold, as follows: one hundred and thirty-three bonds, held by Smith, Newman & Co., on the eleventh of March, 1868, for $37,959 20; the three hundred and thirty-two bonds held by Pike, Lapeyre & Brother on the twenty-seventh of July, 1868, for $129,631 30; the eighty-five bonds redeemed from the Citizens' Bank, three redeemed from the Canal Bank, and three which had never been pledged, were, on the twenty-ninth of March, 1869, sold by the Treasurer, pretending to act under authority of act No. 58, approved March 5, 1869, with $30,800 of past due coupons, for $74,165; the two hundred and thirty bonds pledged to Smith, Newman & Co. on the fifth of June, 1868, for $64,300; the fifty-seven bonds pledged to the Canal Bank on the twenty-second of August, 1868, for thirty thousand dollars; and one hundred and sixty-seven bonds were sold by the Board of Public Works and the State Treasurer, under the authority of act No. 123 of 1869, for $125,513 89; making a total receipt from the sale of these bonds, with past due coupons attached, of $461,559 39, and not for a sufficient amount to pay the interest on the loans and the interest on the bonds at that time already paid by the State, all of which was in defiance of the law ordering their cancellation, and when there was ample means in the hands of the officers of the State having custody of the same to carry out the law's mandate with regard to them.

He avers that all of these bonds, except the one hundred and thirty-three pledged to Abat & Generes, the three hundred and thirty-two pledged to Pike, Lapeyre & Brother, and the seventy-five pledged to the Citizens' Bank, and that the other four hundred and sixty bonds were either in the hands of the Treasurer at the time of the passage of the act No. 116 of 1867, or were subsequently redeemed and came into his possession free from pledge, and should have been and were in contemplation of law canceled and destroyed, and are in no way, in law or good morals, binding on the State.

He prays that the Auditor be enjoined from warranting on the Treasurer and the Treasurer enjoined from paying any of the bonds or interest coupons thereto attached issued under act No. 35 of 1865.

The injunction issued as prayed for.

Morey intervened in this proceeding. He averred that he is the holder of twenty of the bonds issued in conformity with the provisions of act No. 35 of 1865, with the coupons of interest thereto attached; that he purchased them years before this suit was brought, in open market, in the usual course of trade, and for full market value; that he has presented his interest coupons to the Auditor and to the State Treasurer for payment, which has been denied to him on account of the injunction obtained by the Attorney General. He prays that the injunction be dissolved, and that the Auditor be ordered to audit and the Treasurer to pay the interest coupons which he holds.

Subsequently he made the Funding Board a party to the suit, and he prays that that board be ordered to fund his bonds according to the provisions of act No. 3 of 1874, known as the funding bill.

To this intervention the State answers, admitting the issue of one thousand bonds of one thousand dollars each, under act No. 35 of 1865, as described in the intervention of Morey, for the purpose of building levees, but denies that any of the bonds were legally sold or parted with by the State or by any person authorized to sell the same. It is averred that by act No. 115, approved March 26, 1867, providing for the issue of four million dollars of bonds for the building and repair of levees, ample provision was made for the objects contemplated in act No. 35 of 1865, and for the redemption of such bonds as might be out on pledge under the provisions of that act, and act No. 116, passed the same day as act No. 115, required the State Treasurer and Auditor, with the Governor, to cancel and destroy all of the one thousand bonds issued under act No. 35 of 1865, and that these bonds were, from the approval of acts Nos. 116 and 115, null and void, and incapable of being issued.

The foregoing are the pleadings in the case, and we have detailed them at length in order that the issue between the parties may be fairly and distinctly seen.

From these pleadings and from the evidence in the record it is unquestionable—

First—That the bonds were issued under and by virtue of legislative authority.

Second—That the proceeds thereof went into the State treasury and were appropriated to a purpose vital to the interests of the public.

Third—That the bonds in suit are in the hands of a *bona fide* holder, who purchased them in open market and for a valuable consideration.

By act No. 35 of the session of 1865, entitled an act to authorize the Governor to issue the bonds of the State for the amount of one million dollars, and to provide for the same, to defray the expenses of building levees in accordance with the contracts made by him and the levee com

missioners appointed for that purpose, the Governor was authorized to issue the bonds of the State to the amount of one million dollars, payable in twenty years; the sale of these bonds was to be advertised for thirty days, the Governor and Board of Commissioners having the power to accept or reject the bids from the general fund to the levee or drainage fund, and to appropriate the same to levee purposes. The Treasurer was authorized to return from the general fund to the levee and drainage fund one hundred and fifty thousand dollars borrowed from that fund by act No. 45 of 1863. One hundred and fifty thousand dollars was appropriated for the purpose of paying sums then due to laborers upon the levees from the money to the credit of the levee and drainage fund, returned by this act; should there be no funds in the State treasury available for the purpose of the act, the Auditor and Treasurer were authorized and it was made their duty to borrow, for sixty or ninety days, as they might deem best, the said sum of one hundred and fifty thousand dollars then appropriated, and they were authorized to pledge as collateral security for said loan so much as may be necessary of the seven hundred thousand dollars of bonds of the State issued in accordance with the act of the twenty-second of December, 1865, which bonds were then in the treasury of the State.

By act No. 115 of the twenty-sixth of March, 1867, the Governor was authorized and directed to issue bonds of the State to the amount of four million dollars, to provide means for the construction of levees.

By act No. 116 of the twenty-sixth of March, 1867, the act of the twenty-second of December, 1865, which authorized the Governor to issue bonds to the amount of one million dollars, was repealed, and by the same act the Board of Levee Commissioners were to surrender bonds to the amount of seven hundred thousand dollars, issued to them under the provisions of the act of the twenty-second of December, 1865, to the Auditor and Treasurer, who, in the presence of the Governor or Secretary of State, were to cancel and destroy the same, as well as the bonds of the same issue then in the treasury, and also the bonds of the same issue which may have been pledged to borrow money under the provisions of law.

By joint resolution of the twenty-eighth of March, 1867, two hundred and fifty thousand dollars were appropriated to meet any danger of crevasses to the levees, and the State Treasurer was authorized to pledge the bonds then in the treasury for the purpose of borrowing the money which might be necessary to carry out the appropriation.

There is no dispute, or at all events it is undeniable, that all the bonds referred to in the different acts which we have quoted from, regarding bonds in the treasury, were bonds issued originally in pursuance to act No. 35 of 1865, and it is equally undeniable that whenever they were

issued and re-issued after having come again into the treasury, it was under the positive direction of the Legislature, and always for works of public utility.

It is not disputed that the Legislature had the power to issue the bonds under act No. 35 of 1865, but it is contended that they were not legally sold or parted with by any person authorized by law to sell the same. They were pledged in conformity with the laws which authorized this proceeding, and they were sold by the pledgees as they were authorized to sell them, when the debt for which they were pledged was due and unpaid.

It is claimed on the part of the State that the act No. 115 of the twenty-sixth of March, 1867, providing for the issue of four million dollars of bonds, made ample provision for the objects contemplated by act No. 35 of 1865, and for the redemption of such bonds as might be out on pledge under the provisions of that act.

But the bonds in question were issued in pursuance of the joint resolution passed on the twenty-eighth of March, 1867. The act No. 115 was evidently intended to enable a great work to be carried on; the joint resolution would seem to have been the result of a sudden exigency requiring prompt and immediate action. At all events there is nothing contradictory in them, and if there were, the resolution being of later date would govern. It is, however, urged that act No. 116 of the twenty-sixth of March, 1867, repealed the act of the twenty-second of December, 1865, and that as the bonds issued under that act, which were then in the treasury, were ordered to be canceled and destroyed, the joint resolution passed two days later could not be carried into effect. In other words, that because the bonds were ordered to be canceled, therefore they were canceled. But presumption must give place to facts, and the facts are that they were not canceled, but on the contrary were re-issued.

The power of the Legislature to re-issue the bonds after they had come back into the treasury has been denied, but it seems to us that if the Legislature had the power (which is not denied) to issue any bonds at all, it is a matter of indifference, when she orders them to be issued, whether they be bonds newly printed or whether they be her bonds issued at a former date, and which have been returned to the treasury and which have not been canceled.

But the State contends that the bonds now in suit were issued under the third section of act No. 35 of 1867, and that this section is unconstitutional because its object is not expressed in its title. Of this opinion was the district judge, and it was for this reason that he dismissed the intervenor's claim.

The object or objects of a law must be expressed in its title. Consti-

226     SUPREME COURT OF LOUISIANA,

State ex rel. Attorney General vs. Clinton, Auditor, and Dubuclet, Treasurer.

tution, article 114. The title to act No. 35 reads as follows: "An act to authorize the return of one hundred and fifty thousand dollars from the general fund to the levee and drainage fund, and to appropriate the same for levee purposes."

Here were two objects, viz.: First, to return a certain sum of money from one fund to another; and, secondly, to appropriate that sum for levee purposes. The first section of the act authorizes the return of the fund to where it belonged; the second section made the appropriation. The third section authorizes the borrowing of the money appropriated, and directs that bonds shall be pledged to secure the payment of the amount borrowed.

We regard the third section of this act as a mere incident to the second section. The appropriation was made by the second section, and the third section merely provided the means by which the appropriation might be obtained provided there was no money in the treasury with which to pay it. The object of the bill was the appropriation, and that is certainly and in terms set out in the title.

Therefore considering —

First—That the bonds in question were issued under and by competent authority;

Second—That the proceeds thereof, when disposed of, went into the treasury to be appropriated to legitimate purposes;

Third—That the acts under which they were issued are not unconstitutional; and

Fourth—That they are in the hands of a *bona fide* purchaser for value;

It is now ordered, adjudged, and decreed that the judgment of the district court be avoided, annulled, and reversed, and that there be judgment in favor of the intervenor, Frank Morey, and that the defendant, the Funding Board, be ordered to fund the bonds in question according to law.

———

WYLY, J., *concurring*. In my opinion the third section of act No. 35 of the acts of 1867 is unconstitutional, because it is not covered by the title.

I place my concurring opinion, however, on the grounds that the bonds were lawfully issued to the Board of Levee Commissioners under act No. 35 of the acts of 1865; that Pike, Lapeyre & Brother acquired them in good faith, and for value in pledge, on the second of March, 1867, four days before the passage of act No. 116 of the acts of 1867, repealing act No. 35 of the acts of 1865, under which they were issued; that at the time Pike, Lapeyre & Brother acquired these bonds, the exchange of State notes for bonds made by the State Treasurer with the Board of

State ex rel. Attorney General vs. Clinton, Auditor, and Dubuclet, Treasurer.

Levee Commissioners was unlawful, it not having been ratified by the State; that these bonds had not of right been returned into the treasury, although in possession of the Treasurer; that the latter being the holder of these bonds, lawfully issued by the State, could make a valid pledge of them to a *bona fide* lender of money on the faith thereof; that Pike, Lapeyre & Brother so acquired them; that these bonds were subsequently sold in open market, before due, for their market value, to Frank Morey, and that as the State derived a valuable consideration, the rights of Morey, the purchaser, should be respected and upheld. As these bonds were never returned into the treasury, they never came under the operation of the act No. 116 of the acts of 1867, ordering them to be canceled. Without expressing any opinion as to the balance of the one-million levee issue, as they are called, I agree that the twenty of said issue of one thousand dollars each, held by the intervenor, Frank Morey, are valid obligations of the State, and should be funded. As the validity of the intervenor's bonds are the only ones in question in the case now presented, the decision rendered can extend to no others.

I therefore concur.

See 21 Wallace, 138, 321, 354.

Rehearing refused.